# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

YOLANDA M. PETERS,

       Plaintiff,

v.                                 No. CIV 14-464 JAP/KK

HONEYWELL INTERNATIONAL INC.,

       Defendant.

## MEMORANDUM OPINION AND ORDER

On March 18, 2015, Defendant Honeywell International Inc. filed DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 31) (Motion), seeking dismissal of Plaintiff Yolanda M. Peters' claims of age discrimination and breach of employment contract. PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 35) (Response) contends that genuine disputes of material fact preclude summary judgment in favor of Defendant. The REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 40) (Reply) argues that both of Plaintiff's claims fail as a matter of law and that Plaintiff's Complaint should be dismissed with prejudice.

### Background

Plaintiff worked over 30 years at Honeywell's Albuquerque facility before Defendant terminated her employment in July 2011 for alleged violations of its timekeeping policies. Plaintiff contends that Defendant's stated reasons for terminating her were "pre-textual and intended to conceal Honeywell's motive to terminate [Plaintiff] because of her age." NOTICE

OF APPEAL AND COMPLAINT FOR EMPLOYMENT DISCRIMINATION (Doc. No. 2-1) (Complaint ¶ 16). In addition, Plaintiff claims that Defendant breached an employment contract "by failing to undertake a full, fair and competent review of Plaintiff's conduct as set forth in Honeywell's written policies and then discharging her for false reasons." Response at 10 (quotation marks omitted).

Defendant denies Plaintiff's claims and argues that Plaintiff violated Defendant's Time Recording and Pay Practices Policy and the Code of Business Conduct by failing to accurately record her time at work, which is a terminable offense. Motion at 1, 14. Thus, Defendant terminated Plaintiff's employment for a legitimate, non-discriminatory reason. *Id.* at 19. Defendant also asserts that Plaintiff was an at-will employee, who could be terminated at any time and for any reason. Plaintiff did not have a contractual right to progressive discipline before she was terminated, and the termination of Plaintiff's employment did not violate any contractual agreement between the parties. *Id.* at 2.

## Subject Matter Jurisdiction

The parties do not challenge the Court's subject matter jurisdiction over this proceeding. However, the Court has an independent duty to examine its jurisdiction. *1mage Software, Inc. v. Reynolds and Reynolds Co*., 459 F.3d 1044, 1048 (10th Cir. 2006) ("Federal courts 'have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party,' and thus a court may *sua sponte* raise the question of whether there is subject matter jurisdiction 'at any stage in the litigation.'") (citations omitted).

On December 4, 2012, Plaintiff filed the Complaint in New Mexico State District Court, asserting two state-law claims – age discrimination in violation of the New Mexico Human Rights Act and breach of employment contract in violation of New Mexico state law. Plaintiff

2

alleged that as of December 4, 2012, the amount in controversy did not exceed $75,000. Complaint ¶ 10. The State Court proceeding was delayed by the dismissal and then later reinstatement of the lawsuit. NOTICE OF REMOVAL (Doc. No. 2) (Notice ¶¶ 2–6).

On May 16, 2014, after reinstatement of the State Court lawsuit, Defendant removed the case to federal district court based on diversity jurisdiction under 28 U.S.C. § 1332. The Notice alleges that the parties are diverse in citizenship and that the amount in controversy exceeds the value of $75,000, exclusive of interest and costs. *Id.* ¶¶ 9–12. The Notice states that defense counsel spoke to Plaintiff's counsel on August 28, 2013 to confirm that Plaintiff's request for damages exceeded the jurisdictional minimum of $75,000. *Id.* ¶ 11; Declaration of defense counsel, Ex. G. In addition, on August 28, 2013, Plaintiff's counsel wrote a letter to defense counsel stating that Plaintiff's damages "likely" exceeded $75,000 as of August 2013, although Plaintiff's counsel noted that Plaintiff's damages did not exceed the jurisdictional minimum when she filed the Complaint in December 2012. *See id.*; Notice, Ex. H.

In light of these communications between the parties' attorneys, it is not clear why Plaintiff's counsel represented in the Joint Status Report (Doc. No. 14), filed July 31, 2014, that he intended to file a motion for remand. In any event, no motion for remand was filed and the deadline for doing so has elapsed.

Based on assertions in Defendant's Notice of Removal, along with supporting evidence, the Court concludes that the parties are diverse and that the jurisdictional minimum is met. Thus, as of the date of removal, the Court attained diversity subject matter jurisdiction over the lawsuit. *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939) (right to remove is determined at the time the petition for removal is filed). *See also Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547, 554 (2014) ("as specified in § 1446(a), a defendant's notice of removal need

include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold").

## Summary Judgment Standard

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). When applying this standard, the Court examines the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The party seeking summary judgment bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case." *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991) (internal quotation marks omitted). Once the movant meets this burden, Rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). In considering a motion for summary judgment, then, the Court's "role is simply to determine whether the evidence proffered by plaintiff would be sufficient, if believed by the ultimate factfinder, to sustain her claim." *Foster v. Alliedsignal, Inc.*, 293 F.3d 1187, 1195 (10th Cir. 2002).

## Undisputed Material Facts

Plaintiff challenges only four of Defendant's 71 Undisputed Material Facts (UMFs) and adds four facts that she contends are undisputed and material in resolving Defendant's Motion. Response at 1–3 (challenging UMF Nos. 17, 25, 28, and 29; adding UMF Nos. 72–75). Defendant argues that Plaintiff mischaracterizes the record in her objections to Defendant's UMFs and that the Court should consider UMF Nos. 17, 25, and 28 to be undisputed. Reply at 4.

Defendant also contends that Plaintiff's UMF Nos. 73–75 are immaterial or misstatements of the record. *Id.* 3–5. Unless otherwise noted, the following material facts are undisputed.

Plaintiff worked for Defendant for over 30 years before Defendant terminated her employment on July 19, 2011. Plaintiff was 53 years old at the time of her discharge from employment and held a non-exempt position of Associate II Engineering at Defendant's facility in Albuquerque. Plaintiff received satisfactory performance reviews during her employment with Defendant.

### At-Will Employment

Plaintiff's employment with Defendant was at-will, meaning that "you have the right to terminate your employment at any time and for, any reason, and Honeywell may exercise the same right, consistent with applicable laws." Motion, Doc. No. 31-2 (Bates 000115); Doc. No. 31-6 (Bates 000023). Defendant did not maintain a progressive discipline policy. Although Plaintiff heard about a purported progressive discipline policy during a training session in 1981, she admits that any progressive discipline policy was subject to certain exceptions like theft at work.

### Rest Breaks and Lunch Period

Defendant allows non-exempt employees like Plaintiff to take two paid rest breaks of 15 minutes each and one unpaid meal period of 30 minutes. Employees do not clock in or out for their two paid 15-minute rest breaks. They must, however, clock in and out for the one unpaid 30-minute meal period.

### Code of Business Conduct and Time Recording Policy

During her employment with Defendant, Plaintiff received training on Defendant's Code of Business Conduct and Defendant's Time Recording and Pay Practices Company-Wide Policy

(Time Recording Policy). Plaintiff was also given written instructions regarding the Time Recording Policy throughout her employment. Defendant's "Time Reporting and Pay Practices Refresher for Non-Exempt Employees" ("Refresher instructions") instructs employees that they must "record the *exact time* the [lunch] period was taken – to the minute." The Refresher instructions also specify that rest breaks "*may not* be combined with a meal period break." *Id.*, Doc. No. 31-5 (Bates 000014) (emphasis in original). In January 2010, Plaintiff completed annual training that included a review of Defendant's Time Recording Policy.

Plaintiff understood that she also was expected to adhere to Defendant's Code of Business Conduct during her employment. The Code of Business Conduct requires all employees to maintain complete and accurate company records, including time cards and time recording system records. The Code of Business Conduct states that employment is at-will and that failure to comply with the Code of Business Conduct can result in termination.

Plaintiff understood that she was expected to comply with Defendant's Time Recording Policy during her employment. The Time Recording Policy states that all non-exempt employees must "accurately and completely" record "all of the time that they work, including the actual time the employee starts work, the actual time the employee begins his or her unpaid meal period(s), the actual time the employee returns from the unpaid meal period(s) and resumes work, the actual time the employee leaves for and returns from other approved absences…and the actual time the employee stops work for the day." Doc. No. 31-4 (Bates 000092–93).The Time Recording Policy specifies that all non-exempt employees "must record their start and stop times throughout the day to the precise minute (e.g., 8:02 a.m.) …." *Id.* (Bates 000093).

The Time Recording Policy also informs employees that the failure to abide by the policy may subject an employee to discipline, "up to and including termination." *Id.* (Bates 000098).

According to Defendant, the failure of an employee to accurately record work time is a terminable offense. Plaintiff understood that Defendant strictly enforces the Time Recording Policy and that it takes seriously any violations of the policy.

### *Plaintiff's Timekeeping Practices and Records*

Sometime before 2010, Plaintiff began taking her two paid 15-minute rest breaks together with her one unpaid 30-minute lunch period in a single one-hour block of time. She continued this practice until her termination in July 2011. Plaintiff's practice was to leave her work area and take a one-hour break without clocking out of the timekeeping system. Upon returning from the one-hour break, Plaintiff clocked out for her 30-minute lunch period but continued to perform work at her desk while she was clocked out. After 30 minutes passed, Plaintiff clocked in and continued working. Thus, Plaintiff took her unpaid 30-minute lunch period but did not record the actual time she was at lunch.

### *Defendant's Investigation*

On April 18, 2011, Chris Kutac (Mr. Kutac), a supervisor at Defendant's Albuquerque facility, reported to Human Resources that another employee, Tammi Berry, had violated Defendant's Time Recording Policy. Ms. Berry's practice was to clock out for her lunch period and to continue to perform work while she was clocked out. After 30 minutes, Ms. Berry clocked back in as if she was performing work, but she then left her work area and/or the facility for an extended time. Mr. Kutac reported to Human Resources that Ms. Berry regularly had lunch with Plaintiff, who also might be violating the Time Recording Policy. In addition, another employee, Karen Mogen, was identified as taking lunch breaks with Plaintiff and Ms. Berry.

Upon learning of Mr. Kutac's timekeeping concerns, Defendant's Senior Human Resources Generalist, Sue Kline (Ms. Kline), commenced an internal investigation. Ms. Kline

considered possible timekeeping violations to be serious. Ms. Kline reviewed the time-recording practices of Plaintiff, Ms. Berry, and Ms. Mogen. She interviewed each of the three employees and prepared a written summary of her investigation, entitled "Business Conduct Incident Report." Motion, Doc. No. 31-6 (Bates 000042).

On May 26, 2011, Ms. Kline interviewed Plaintiff with her current supervisor, Patrick Zetterholm (Mr. Zetterholm), present. Mr. Zetterholm became Plaintiff's supervisor in the fall of 2010. Jacque Rodriguez (Mr. Rodriguez) was Plaintiff's previous supervisor.

During the interview, Plaintiff admitted she was combining her rest breaks with the lunch period. Plaintiff contends that Mr. Rodriguez requested Plaintiff to combine her rest breaks with her lunch period to accommodate Defendant's production needs and to enhance Plaintiff's productivity.

Ms. Kline contacted Mr. Rodriguez about Plaintiff's timekeeping practices, and Mr. Rodriguez stated that he allowed Plaintiff to combine her rest breaks with her lunch period "at Plaintiff's request." UMF No. 47. Plaintiff did not contest UMF No. 47. Response at 1–3. Therefore, UMF No. 47 is deemed admitted. D.N.M. LR-Civ. 56.1(b) ("All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted."). Mr. Rodriguez told Ms. Kline that he specifically instructed Plaintiff to record all of her time accurately in compliance with the Time Recording Policy.[1]

Plaintiff understood that Mr. Rodriguez's permission to combine rest breaks with the lunch period was inconsistent with Defendant's Time Recording Policy. But, Plaintiff believed that Mr. Rodriguez had informed Defendant's Human Resources personnel about Plaintiff's lunch hour practice. Mr. Rodriguez did not tell Plaintiff to enter false time records. Plaintiff concedes that she was responsible for entering her work hours to reflect that she took a 30-

---

[1] Mr. Rodriguez apparently was not deposed, and neither party submitted his affidavit.

minute meal period. UMF No. 29. In contrast with this concession, Plaintiff argues in her Response that "[m]anagement, not Peters, was responsible for review and insuring the accuracy of Plaintiff's time records." Response at 2–3. However, Plaintiff did not dispute UMF No. 29 and it is deemed admitted. D.N.M. LR-Civ. 56.1(b).

In the fall of 2010, after Mr. Zetterholm became Plaintiff's supervisor, Plaintiff continued to combine her two paid rest breaks with her one unpaid lunch period although she never told Mr. Zetterholm about her earlier arrangement with Mr. Rodriguez. Mr. Zetterholm did not know of Plaintiff's timekeeping practices and had not approved of Plaintiff's practice of taking her two rest breaks together with her lunch period.

Ms. Kline reviewed Plaintiff's time records from January 1, 1011 through May 19, 2011, including Plaintiff's time entries in the online "e-Shop timekeeping system." Employee payroll calculations are based on the time entered by an employee in the e-Shop timekeeping system. Ms. Kline also checked the Security Log records showing Plaintiff's physical entry into and exit from the facility.

### *Timekeeping Violations*

Ms. Kline's concluded that Plaintiff had engaged in repeated timekeeping violations. Ms. Kline identified 14 instances when Plaintiff had entered more time worked in the e-Shop timekeeping system than the total time Plaintiff was physically present in the facility, as shown by the Security Log records. Plaintiff's time entries in the e-Shop timekeeping system exceeded the total time she was physically present in the facility by a total of 6 hours and 39 minutes. Ms. Kline also discovered 15 occasions when Plaintiff did not accurately record her lunch periods. In each instance, the time slots Plaintiff recorded as lunch periods did not correspond with the blocks of time Plaintiff left the facility. In addition, there were two dates when Plaintiff did not

record a lunch period but where the Security Log records reflected that Plaintiff left the facility. Ms. Kline concluded that Plaintiff did not accurately record a total of 8 hours and 54 minutes of her work time.[2]

### *Termination of Employment*

Based on Plaintiff's failure to accurately record her work hours in violation of Defendant's Time Recording Policy and the Code of Business Conduct, Defendant terminated Plaintiff's employment, effective July 19, 2011. Defendant also discharged Ms. Berry (age 51) and Ms. Mogan (age 54) for similar violations of Defendant's policies.

### *Evidence of Age-Based Discrimination*

Plaintiff was never subjected to comments reflecting age-based animus in Defendant's workplace, and there is no direct evidence to support the age discrimination claim.

### Discussion

### I.      AGE DISCRIMINATION (Count I)

Plaintiff alleges age discrimination under the New Mexico Human Rights Act (NMHRA). The NMHRA prohibits age discrimination in the workplace. NMSA 1978 § 28-1-7(A). In cases where direct evidence of age discrimination is lacking, New Mexico courts employ the *McDonnell Douglas* framework to provide guidance in interpreting claims brought under the NMHRA. *Smith v. FDC Corp.*, 109 N.M. 514, 517–18 (1990) (citing *McDonnell*

---

[2] Defendant does not argue that Plaintiff was paid for more hours than she actually worked. Ms. Kline testified that Plaintiff's handwritten time records of hours worked matched the e-Shop timekeeping records, Reply at 5, which may infer that Plaintiff was not overpaid. Rather than arguing that Plaintiff was paid for more time than she worked, Defendant primarily contends that Plaintiff's inaccurate timekeeping practices violated the Time Recording Policy and that taking paid rest breaks outside the facility violated Defendant's policy. Reply at 7, 10 n.2.

*Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973)).[3] *See also Juneau v. Intel Corp.*, 139 N.M. 12, 15 (2005) (when considering a violation of the NMHRA, the New Mexico Supreme Court found it useful to employ the *McDonnell Douglas* burden-shifting framework). While direct evidence demonstrates "on its face" that a termination of employment was discriminatory, circumstantial evidence permits a reasonable inference to be drawn indirectly from the facts that discrimination has occurred. *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (citations omitted).

### *Prima Facie Case of Age Discrimination*

Under *McDonnell Douglas*, Plaintiff must first satisfy the following elements of a prima facie case of age discrimination: 1) Plaintiff is a member of a protected class of persons who are at least 40 years old; 2) Plaintiff was qualified to continue in the position at work; 3) Plaintiff's employment was terminated; and 4) Plaintiff was replaced by a substantially younger employee with equal or inferior qualifications, or Plaintiff was discharged under circumstances giving rise to an inference of age discrimination. *Cates v. Regents of the New Mexico Inst. of Mining & Tech.*, 124 N.M. 633, 638 (1998). There are no disputes as to the first and third elements. Plaintiff is over 40 years of age and her employment was terminated.

The parties dispute, however, whether Plaintiff was performing satisfactorily in her position when Defendant terminated her employment. Defendant argues that Plaintiff cannot show she was performing her job satisfactorily when the evidence demonstrates she failed to comply with Defendant's policies. Motion at 17–18. In contrast, Plaintiff relies on "31-years of

---

[3] In *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 534 (Ct. App. 2013), the New Mexico Court of Appeals noted the United States Supreme Court's application of newer and harsher standards of proof in federal age discrimination claims. In *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009), the Supreme Court established "for the first time in federal age discrimination cases that the plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision, and eliminating the shifting of the burden of persuasion to the employer to show that it would have taken the action regardless of age…." Because the *Slusser* Court "[left] for another day" the question of whether to apply the harsher *Gross* standard to claims brought under the NMHRA, this Court does not use the *Gross* standard of proof in evaluating Plaintiff's age discrimination claim.

progressively competent job performance," Response at 8, along with a recent satisfactory performance evaluation in 2010.

In *Brainerd v. Schlumberger Tech. Corp*., 589 F. App'x 406, 410 (10th Cir. Jan. 6, 2015), the Tenth Circuit Court of Appeals instructed that in evaluating evidence of a prima facie case it was a mistake for the district court to focus on the defendant's evidence supporting its reason for terminating the plaintiff rather than the plaintiff's credible evidence that she was performing satisfactorily. Observing that the plaintiff's burden "is not a heavy one" in meeting the requirements of a prima facie case, the Tenth Circuit Court said that "a plaintiff can demonstrate her satisfactory performance simply by insisting that she was performing satisfactorily." *Id.* (citation omitted). Plaintiff has alleged that she was performing her job satisfactorily. This is sufficient at the summary judgment stage.

With respect to the fourth element of the prima facie case, it is unknown if Plaintiff was replaced by a younger employee or if her position still exists with the company. Defendant argues that Plaintiff can present no evidence that she was discharged under circumstances giving rise to an inference of age discrimination. Motion at 18, Reply at 7. To show that Defendant discriminates against older workers, Plaintiff relies on the fact that Defendant terminated the employment of Ms. Berry and Ms. Mogen, who were both over the age of 40. *See* Response at 4. Defendant asserts that there is no dispute, however, that Ms. Berry and Ms. Mogen lost their jobs due to similar violations of the Time Recording Policy. Motion at 18.

The Court need not decide this question as the Tenth Circuit Court of Appeals has previously noted that the fourth element of the prima facie burden in cases like this often involves an inquiry similar to the one surrounding a plaintiff's burden of demonstrating pretext. *Baltazar v. Shinseki*, 485 F. App'x 941, 946 (10th Cir. June 25, 2012). *See Bolton v.*

*Sprint/United Mgmt. Co.*, 220 F. App'x 761, 767 (10th Cir. Mar. 6, 2007) (deciding to evaluate an appeal under the pretext standard because "the pretext review may properly encompass evidence supporting the prima facie case," which is not an onerous burden). The Court will evaluate this case at the pretext stage and will decide whether Defendant's stated reasons for the termination decision are a pretext for unlawful discrimination. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1211 (10th Cir. 2010) ("The real dispute in this case, like many others, centers on *McDonnell Douglas'* third step": pretext.).

Thus, while Plaintiff's evidence supporting a prima facie case of age discrimination is not strong, the Court will give Plaintiff the benefit of a liberal interpretation of the second and fourth elements of a prima facie case of age discrimination. *See Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 n. 6 (10th Cir. 2000) ("[c]ollapsing the four-part prima facie case of *McDonnell-Douglas* into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories, e.g. hiring or discharge, or present unusual circumstances.").

### ***Defendant's Proffered Reason for the Termination Decision***

Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to show some legitimate, non-discriminatory reason for its employment decision. *Smith*, 109 N.M. at 518. Defendant has produced evidence that it terminated Plaintiff's employment because of Plaintiff's violations of Defendant's Code of Business Conduct and Defendant's Time Recording Policy. Thus, Defendant has articulated a legitimate, non-discriminatory reason to terminate Plaintiff's employment.

### *Pretext*

Under the *McDonnell Douglas* framework, once Defendant sets forth a legitimate, non-discriminatory reason for its employment decision, the burden shifts back to Plaintiff to show that there is a genuine dispute for trial about whether Defendant's proffered explanation was a pretext for discrimination. *Cates*, 124 N.M. at 638, 639–640.

The Court borrows from federal law in describing evidence that may show pretext. *See Garcia-Montoya v. State Treasurer's Office*, 130 N.M. 25, 41–42 (2001) (citing a United States Supreme Court decision for the proposition that an employer's false explanation for an adverse employment action might be probative evidence of intentional discrimination). The Tenth Circuit Court of Appeals has instructed that "[a] plaintiff demonstrates pretext by producing evidence of such weaknesses in the employer's proffered legitimate reasons for its action." *Estate of Bassatt v. Sch. Dist. No. 1 in the City & Cnty. of Denver*, 775 F.3d 1233, 1239 (10th Cir. 2014) (citation omitted). Pretext may be shown where a defendant's explanation for an adverse employment action is unworthy of belief "because of incoherence, weaknesses, inconsistencies, or contradictions. *EEOC v. C.R. England, Inc*., 644 F.3d 1028, 1038–39 (10th Cir. 2011).

Thus, for example, a plaintiff's pima facie case of discrimination, along with sufficient evidence to show an employer's proffered reason for the adverse action was false or unworthy of credence, might be sufficient for a factfinder to conclude that the employer engaged in unlawful discrimination. *See Reeves v. Sanderson Plumbing Products, Inc*., 530 U.S. 133, 148 (2000) (citations omitted) (reversing Court of Appeals decision and holding that the plaintiff had produced sufficient evidence for a factfinder to conclude that the employer had unlawfully discriminated). However, in *Reeves*, the Supreme Court cautioned:

> This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there

> will be instances where, although the plaintiff has established a
> prima facie case and set forth sufficient evidence to reject the
> defendant's explanation, no rational factfinder could conclude that
> the action was discriminatory. For instance, an employer would be
> entitled to judgment as a matter of law if the record conclusively
> revealed some other, nondiscriminatory reason for the employer's
> decision, or if the plaintiff created only a weak issue of fact as to
> whether the employer's reason was untrue and there was abundant
> and uncontroverted independent evidence that no discrimination
> had occurred.

*Id.* (emphasis in original) (citations omitted).

Plaintiff argues that an inference of pretext should be found because "there is sufficient evidence that the reason articulated by the employer is materially false." Response at 9. "The falsity of the allegations [against Plaintiff] was known to Honeywell at the time the decision to terminate Peters was made." *Id.* Plaintiff also asserts that "[a]n issue of fact exists with regard to whether the basis for Plaintiff's discharge was simply an accident, or whether it was knowingly false." *Id.* at 10.

In support of this argument, Plaintiff states:

> The undisputed evidence of record is that Peters' daily work
> schedule was modified by Honeywell management to create a *de
> facto* one hour lunch break, one half of which was paid and one
> half unpaid consistent with Honeywell pay policies. When
> Defendant argues that the total number of hours Plaintiff was at the
> worksite, as measured by Honeywell's computerized time
> recording system, was less than the time than she was paid,
> Defendant is correct. This is because one half of Plaintiff's lunch
> period, often times taken outside the worksite, was paid time.
> However, when Plaintiff's pay is compared to her hand written
> time records, no discrepancy is found. These circumstances are
> wholly consistent with and the result of managerial directive and
> not any willful or voluntary behavior by Peters. Honeywell cannot
> direct Peters to perform her job in a certain manner, and then assert
> that Peters' compliance with managerial directive constitutes
> malfeasance.

*Id.* at 9. The main problem with Plaintiff's argument is that she does not challenge Defendant's undisputed material facts that: 1) Plaintiff entered more time worked in the e-Shop timekeeping system than the total time she was physically present in the facility on 14 dates in 2011; 2) Plaintiff was paid for a total of 6 hours and 39 minutes when she was not in the facility on the same 14 dates in 2011; 3) Plaintiff did not accurately record her lunch period on 15 dates in 2011; 4) Plaintiff did not record a lunch period on two dates when Defendant's Security Log records reflect that Plaintiff left the facility; and 5) Plaintiff did not accurately record a total of 8 hours and 54 minutes of her time during 2011. UMF No. 51–55. These undisputed material facts are deemed admitted by Plaintiff's failure to contest them. D.N.M. LR-Civ. 56.1(b).

Another problem with Plaintiff's argument is that she does not support her contentions with evidence. Plaintiff does not identify any specific evidence to prove that she was paid for exactly the time she worked and that her timekeeping records accurately reflected the time she worked and the time she took for lunch periods. Instead, Plaintiff's attorney summarily asserts when "Plaintiff's pay is compared to her hand written time records, no discrepancy is found." *Id.* at 9. Argument of counsel is not evidence and cannot provide a proper basis to deny summary judgment. *See Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1198 n. 6 (10th Cir. 2008) ("[t]o avoid summary judgment, a party must produce specific facts showing that there remains a genuine issue for trial").

Plaintiff attempts to explain any discrepancies in the timekeeping records by her use of two paid 15-minute rest breaks, which Plaintiff "often times [took] outside the worksite." Response at 9. Following Plaintiff's logic, Plaintiff could have been outside the plant up to 60

16

minutes on any day[4] when Plaintiff combined her two paid 15-minute breaks with her unpaid 30-minute lunch period.[5] It also follows that up to 30 minutes of the possible 60 minutes outside the plant might have been paid work time since Plaintiff was entitled to two paid 15-minute rest breaks. So, Plaintiff surmises, without "designating specific facts," that her estimated paid rest breaks must explain any discrepancies in Plaintiff's e-shop timekeeping submissions for payroll that did not always match the hours Plaintiff was actually present in the facility. But, there is no way to know the exact time Plaintiff took as part of her paid rest breaks. For example, it is unknown if Plaintiff took two paid 15-minute rest breaks every day or if she might have taken some, but not all, of the break time to which she was entitled every day. Plaintiff conceded that her time records did not reflect her actual lunch periods or rest breaks. Plaintiff's Dep. at 88–89.

Essentially, Plaintiff muddied the equation when she combined two paid 15-minute rest breaks with an unpaid 30-minute lunch period and then "sometimes" left the facility for some, or all, of the 60-minute combined break. Defendant's Refresher instructions on timekeeping, prohibiting the practice of combining rest breaks with the meal period, might have been intended to prevent exactly these types of inaccuracies. Without precise and accurate timekeeping records indicating the hours worked, time spent inside and outside the facility, and time spent at rest breaks and lunch, it is impossible for Plaintiff to cast doubt on Defendant's showing that Plaintiff submitted inaccurate time records. In other words, Plaintiff fails to present a genuine dispute as to Defendant's reason for terminating her employment.

---

[4] Plaintiff testified that once she started combining her two paid 15-minute rest breaks with her unpaid 30-minute lunch period in approximately 2010, she continued to combine the two rest breaks with the lunch period "every day" throughout her employment. Plaintiff's Dep. at 44.

[5] Mr. Zetterholm and Ms. Kline both testified that Defendant required employees to take paid rest breaks on site at the facility. According to Defendant, Plaintiff violated policy when she took paid rest breaks outside the facility. Reply at 10 n.2.

Moreover, Defendant's emphasis on accurate timekeeping is not in dispute. The Code of Business Conduct repeatedly informs employees of the importance of honest and accurate record keeping. The Code states, for example, "[n]ever falsify any record–time card, expense report… or any other kind of record created during the course of your work for our Company–or make misleading or artificial entries on Honeywell's books or records." Motion, Doc. No. 31-3 (Bates 000136). "We must never ignore or seek to circumvent the Code for any reason." *Id.* Doc. No. 31-2 (Bates 000113). Under the section "Honest and Accurate Books and Records," the Code informs the employee that "[w]e have a duty and a legal obligation to make sure that the information we submit in all Company records is complete, accurate and understandable[,]" including information in timecards and time recording systems records. *Id.*, Doc. No. 31-3 (Bates 000142). "[W]e must *never* make a false representation in Company documents." *Id.* (emphasis in original).

The Timekeeping Practices Policy similarly emphasizes the importance of reporting actual and accurate time worked. *Id.* Doc. No. 31-4, ¶¶ 1.0 (time worked must be reported in an "accurate and timely manner"); 4.1.1 (non-exempt employees must use the time recording systems to record, "accurately and completely, all of the time that they work, including the actual time the employee starts work, the actual time the employee begins his or her unpaid meal period(s), the actual time the employee returns from the unpaid meal period(s) and resumes work, …."); 4.1.1.3 ("Employees must be completely relieved from duty during unpaid meal periods"); 4.1.2 ("Employees must record all of their start and stop times … to the precise minute, whether they are recording their entries on manual (handwritten) time sheets, computer (PC-based) systems, or other electronic time recording systems"); 4.1.4 ("Accurately reporting time worked is the responsibility of every non-exempt employees"); 4.1.4.2 (where employees

input or log their time entries to the minute, those employees "must promptly report any discrepancies or questions to their manager or human resources representative"); 5.1.2 ("Employees are required to record all actual start and stop times throughout the day"); 5.1.4 ("Employees are required to review their time records for accuracy and promptly report any discrepancies or questions to their manager or human resources representative"); 4.4.14 ("Anyone who fails to abide by this [Time Recording Policy] may be subject to discipline, up to and including termination"); and 6.2 ("Employees are encouraged to record their time as it occurs each day" to ensure accuracy).

Plaintiff knew about these policies as well as the significance of accurate time records. UMF Nos. 3, 7–8, 12–14, 18, 20–23. When asked if she understood why Defendant took the "Timekeeping Policy" so seriously, Plaintiff answered: "Because when you charge something, you had to make sure you charged the correct time on that. Otherwise, we could come back, and the customer can sue us." Plaintiff's Dep. at 94. Under the circumstances, Plaintiff has failed to raise a genuine dispute sufficient to show that Defendant's stated reason for the termination decision was false. Stated differently, Plaintiff has not demonstrated that a reasonable factfinder could rationally find Defendant's explanation for the termination decision unworthy of credence.

Plaintiff also argues that her practices did not violate the Time Recording Policy. Plaintiff's position is that "management's directives" that Plaintiff combine her lunch and daily breaks violated the Time Recording Policy. However, Plaintiff's argument does not present a genuine dispute to show that Defendant's proffered explanation was a pretext for discrimination. The undisputed facts demonstrate that Plaintiff was aware of the pertinent policies and requirements pertaining to accurate timekeeping and that she admits she did not accurately record her time. UMF Nos. 3, 7, 25.

19

Plaintiff faults Mr. Zetterholm for her inaccuracies in personal timekeeping records. Yet, Plaintiff presents no evidence showing how Mr. Zetterholm could have known about her practice of combining rest breaks with the lunch period since she never told Mr. Zetterholm of her timekeeping practices. UMF No. 33. Moreover, Defendant's written policies emphasize that the employee is responsible for accurate timekeeping. *See, e.g.,* Time Recording Policy, Doc. No. 31-4, ¶ 4.1.4 ("Accurately reporting time worked is the responsibility of every non-exempt employee"). In addition, Plaintiff does not explain why she did not tell her new supervisor about a practice that she knew violated Defendant's policies, notwithstanding an earlier supervisor's approval of her timekeeping practices.

Even if Plaintiff could raise a genuine dispute of material fact sufficient to challenge Defendant's articulated reason for the termination decision, the Court evaluates whether the employer "honestly believed the legitimate, nondiscriminatory reasons it gave for its conduct and acted in good faith upon those beliefs." *Johnson.*, 594 F.3d at 1211; *Townsend-Johnson v. Rio Rancho Public Schs.*, 568 F. App'x 542, 543–44 (10th Cir. June 11, 2014) (Court examines facts as they appeared to the decision-maker).

Defendant produced ample evidence that Ms. Kline thoroughly investigated Plaintiff's timekeeping practices and concluded that, on multiple occasions, Plaintiff submitted inaccurate time records. UMF Nos. 39–56. When asked if Plaintiff was merely inconsistent in her timekeeping, Ms. Kline answered: "No. We're dealing with fraudulent behavior." Kline Dep. at 58. "[Plaintiff] logged in to the system and fraudulently stated that she was at lunch and she worked, and she logged back in, then she got up, left the computer logged in, saying, 'I'm working,' left the facility for an hour, and came back and returned as if she had worked. That's

fraudulent behavior." *Id.* "[T]he behavior here is mischarging, which is not allowed by Honeywell, and Honeywell considers that a terminable offense." *Id.*

In examining the facts as they appeared to the decision-maker, Ms. Kline honestly believed that Plaintiff had engaged in misconduct that required termination under Defendant's policies. Plaintiff did not raise a genuine dispute as to Defendant's claim that Plaintiff's failure to comply with recordkeeping policies was the motivating factor for the employment decision.

Even if Ms. Kline was mistaken in concluding that Plaintiff submitted false or inaccurate time records, a mistake in business judgment is not sufficient to show pretext. "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility." *Simmons v. Sykes Enterprises, Inc.,* 647 F.3d 943, 948 (10th Cir. 2011) (citation omitted). *See* Response at 9 ("Obviously a mistaken or erroneous basis for discharge does not constitute a discriminatory reason for discharge.").

In sum, Plaintiff's prima facie case of unlawful age discrimination is weak. There is no direct evidence of unlawful age discrimination. Defendant produced a legitimate non-discriminatory reason for terminating Plaintiff's employment. Plaintiff failed to raise genuine disputes of fact sufficient to attack Defendant's stated reason for the termination decision. Defendant's articulated reason for its decision to terminate Plaintiff's employment is plausible, worthy of credence, and consistent. Under these circumstances, there is no genuine dispute as to the question of pretext, and Plaintiff's Count I age discrimination claim will be dismissed with prejudice.

## II.        BREACH OF EMPLOYMENT CONTRACT (Count II)

Plaintiff alleges that Defendant's "policies and procedures created a reasonable expectation that Plaintiff's employment with Honeywell would continue absent good and legitimate cause to terminate the employment" and that these policies and procedures created an employment contract that limited the grounds and terms by which Plaintiff's employment could be terminated. Complaint ¶¶ 24–25. Plaintiff also claims that Defendant breached an employment contract by terminating Plaintiff without cause and "by failing to undertake a full, fair and competent review of Peter's alleged conduct …." *Id.* ¶ 29–30.

In the Response to the Motion, Plaintiff admits that discovery had failed to uncover sufficient evidence to support her claim that she was not an at-will employee. Response at 10. "As such, summary judgment is appropriate in so far as Plaintiff asserts that her employment could be terminated for cause only." *Id.* As best as the Court can decipher, it appears that Plaintiff acknowledges there was no employment contract that limited the grounds for which Defendant could discharge an employee. Nor does Plaintiff appear to claim that an implied employment contract for continued employment arose between Defendant and Plaintiff. Even if there were an implied employment contract requiring Defendant to terminate employees for cause only, Plaintiff admits that Defendant terminated her employment "for alleged cause." *Id.*

Plaintiff's contract claim appears to be limited to whether Defendant adequately or properly investigated complaints concerning Plaintiff's timekeeping practices. [6] For example, Plaintiff states that: 1) "Honeywell breached an employment contract by failing 'to undertake a

---

[6] Plaintiff might have argued that Defendant's failure to conduct what appeared to be a fair investigation of the misconduct was evidence of pretext in support of the age discrimination claim. *See Smothers v. Solvay Chemicals, Inc.*, 740 F.3d 530, 542 (10th Cir. 2014) (citations omitted). But, Plaintiff did not make this argument. Moreover, the inference of pretext may be defeated when an employer interviews the employee as well as other key employees about the events. *Estate of Bassatt*, 775 F.3d at 1240. Defendant's investigation, as discussed above, was thorough and included an interview of Plaintiff as well as interviews of other employees.

full, fair and competent review' of Plaintiff's conduct as set forth in Honeywell's written policies and then discharging her for false reasons[;]" 2) Defendant breached a duty to "fairly and competently investigate its allegations of time record fraud[;] and 3) Defendant's written policies provide that violations of policies "will be investigated promptly and thoroughly" and that "[a]ppropriate disciplinary action will be taken whenever necessary." *Id.* at 2, 10–11. Plaintiff argues that Defendant's written policies promising a "prompt and thorough" or "full and fair" investigation are an "implied promise to deal with Plaintiff in a fair fashion." *Id.* In addition, Plaintiff asserts that Defendant's written policies about investigations create a contractual obligation and that this same contractual obligation imposes a duty of good faith and fair dealing on Defendant. *Id.*

Plaintiff does not allege the existence of an express contract that Defendant breached. Presumably, Plaintiff is attempting to show that written representations concerning how Defendant will conduct its investigations amount to an implied contract that modified Plaintiff's employment relationship with Defendant. *See Hartbarger v. Frank Paxton Co.,* 115 N.M. 665, 674 (1993) (an implied contract is created where the employer's statements "[were] intended, or reasonably could be interpreted by [the employee] to be confirmation of an implied contract or modification of the employment relationship."), *cert. denied*, 510 U.S. 1118 (1994). In evaluating whether an implied contract arose, the Court should "consider the totality of the parties' relationship, circumstances, and objectives," to decide if an employee's belief that an implied contract existed was objectively reasonable under the circumstances. *Id.* at 672, 674–675. *See West v. Washington Tru Solutions, LLC*, 147 N.M. 424, 426 (at summary judgment, employee's expectation of an implied contract must meet "a certain threshold of objectivity"), *cert. denied*, 147 N.M. 464 (2009).

The Court views all evidence in the light most favorable to Plaintiff. However, Plaintiff identifies only two sentences from Defendant's written policies as support for her claim that Defendant's policies created an implied employment contract promising a certain type of investigation or a specific discipline. Response at 2, 11. Defendant's Code of Business Conduct states: "All reports [of concern in the workplace] will be investigated promptly and thoroughly, consistent with applicable law …. Appropriate corrective or disciplinary action for Code violations will be taken whenever necessary." Response, Ex. C (Bates 000116). The quoted language is general in nature and more akin to an expression of Defendant's general approach to conducting investigations. "Language that is purported to create an implied term must be sufficiently explicit to give rise to an implied contract. General policy statements of a non-promissory nature contained in an employee handbook are insufficient to create an implied contract." *Stieber v. Journal Pub. Co.*, 120 N.M. 270, 274 (Ct. App.) (citations omitted), *cert. denied*, 120 N.M. 68 (1995); *Ruegsegger v. W.N.M. Univ. Bd. of Regents*, 141 N.M. 306, 313 (Ct. App.) (university sexual harassment policy provided general guidelines of operation and did not obligate university to conduct a specific type of investigation or to impose a specific discipline), *cert; denied*, 140 N.M. 845 (2006). The two sentences from Defendant's Code of Business Conduct are not sufficiently specific to impose contractual obligations on Defendant as to how it conducts its investigations or how it decides the appropriateness of discipline.

Plaintiff does not rely on any other evidence in support of the breach of contract claim. For example, there is no evidence that Defendant made oral representations to its employees about how it would conduct investigations into misconduct. Plaintiff does not claim to have any knowledge about how Defendant typically carries out investigations into misconduct, nor does she assert that investigations into other employees' timekeeping violations resulted in different

types of disciplinary action. In fact, two other employees who were charged with similar timekeeping violations were terminated. The Court concludes, therefore, that Plaintiff's belief that an implied employment contract existed is not objectively reasonable and that Plaintiff has failed to raise a genuine dispute of material fact regarding the existence of an implied contact.

Even if the Court found the existence of an implied contract of employment, Plaintiff did not demonstrate that Defendant's investigation was deficient or that she was entitled to more of an investigation than she received. In other words, the undisputed material facts demonstrate there was no breach. UMF Nos. 35–71

After reviewing the totality of circumstances, the Court determines that: 1) Plaintiff failed to raise a genuine dispute of material fact as to the existence of an implied contract promising Plaintiff a certain type of investigation or a specific disciplinary action; and 2) Plaintiff failed to raise a genuine dispute of material fact that Defendant breached an alleged implied contract. Accordingly, the Court will dismiss with prejudice Plaintiff's breach of employment contract claim.

### III. BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

To the extent Plaintiff's Response can be read to assert a new state law claim of breach of the covenant of good faith and fair dealing, Response at 11, the Court observes that New Mexico does not recognize this cause of action in the context of at-will employment. *Watson v. Blankinship*, 20 F.3d 383, 387 (10th Cir. 1994) (applying New Mexico law) (citations omitted). Plaintiff admits that she was unable to discover evidence to support her initial claim that her employment "was not subject to New Mexico's general rule of at-will employment…." Response at 10. Moreover, Plaintiff's claim of breach of the covenant of good faith and fair dealing depends on the existence of an implied employment contract –"once the contractual

obligation is created the covenant of good faith and fair dealing is implied….". Response at 11. The Court found that Plaintiff did not produce sufficient evidence to raise a genuine dispute as to the existence of an implied contract. Therefore, the Court will dismiss with prejudice Plaintiff's claim of breach of the covenant of good faith and fair dealing.

IT IS ORDERED that DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 31) is GRANTED with the result that Summary Judgment will be entered in favor of Defendant Honeywell International Inc. and Plaintiff's Complaint and all claims against Defendant will be dismissed with prejudice.

_____
SENIOR UNITED STATES DISTRICT JUDGE